1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION, SPRINT COMMUNICATIONS COMPANY L.P., SPRINT SPECTRUM L.P., SPRINT SOLUTIONS INC.,<br><br>          Defendants. | Case Nos. C-13-04513, C-13-04201, C-13-04202, C-13-04203, C-13-04204, C-13-04205, C-13-04206, C-13-04207, C-13-03587<br><br>**ORDER CONDITIONALLY GRANTING MOTION TO MAINTAIN STAY** |
| EVOLUTIONARY INTELLIGENCE, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>          Defendants. | |

United States District Court
For the Northern District of California

1
2
3
4
5
6

EVOLUTIONARY INTELLIGENCE,
LLC,

                    Plaintiff,

v.

FACEBOOK, INC.,

                    Defendants.

7
8
9
10
11
12

EVOLUTIONARY INTELLIGENCE,
LLC,

                    Plaintiff,

v.

FOURSQUARE LABS, INC.,

                    Defendants.

13
14
15
16
17
18

EVOLUTIONARY INTELLIGENCE,
LLC,

                    Plaintiff,

v.

GROUPON, INC.,

                    Defendants.

19
20
21
22
23
24
25

EVOLUTIONARY INTELLIGENCE,
LLC,

                    Plaintiff,

v.

LIVINGSOCIAL, INC.,

                    Defendants.

26
27
28

ORDER MAINTAINING STAY
RDS

- 2 -

1
2

EVOLUTIONARY INTELLIGENCE, LLC,

                              Plaintiff,

v.

TWITTER, INC.,

                              Defendants.

EVOLUTIONARY INTELLIGENCE, LLC,

                              Plaintiff,

v.

YELP, INC.,

                              Defendants.

EVOLUTIONARY INTELLIGENCE, LLC,

                              Plaintiff,

v.

MILLENNIAL MEDIA, INC.,

                              Defendants.

        Following the Patent Trial and Appeal Board's ("PTAB") rulings on several *inter partes*

review ("IPR") petitions concerning U.S. Patent No. 7,010,536 (the "'536 Patent") and U.S. Patent

No. 7,702,682 (the "'682 Patent"), plaintiff Evolutionary Intelligence, LLC ("Evolutionary

Intelligence") requested that the court lift the stay in the *Evolutionary Intelligence, LLC v. Sprint*

*Nextel Corp., et al.* case. Dkt. No. 130. Before ruling on Evolutionary Intelligence's motion, the

court related all of the instant *Evolutionary Intelligence* cases. Dkt. No. 159. In that order, the court

directed the parties to brief the issue of whether the stays—which are currently in place in all related

cases but the *Millennial Media* case[1]—should be maintained following the PTAB's decisions on the IPR petitions. Dkt. No. 159. That issue is now fully briefed. *See* Dkt. No. 163, Defendants' Amended Joint Brief in Support of Maintaining the Stays Pending Inter Partes Review ("Def. Joint Brief"); Dkt. No. 167, Plaintiff's Brief in Support of Lifting the Stays Pending *Inter Partes* Review ("Pl. Joint Brief"); Dkt. No. 170, Defendants' Joint Reply Brief in Support of Maintaining the Stays Pending Inter Partes Review ("Def. Joint Reply"). The court also gave each of the individual defendants leave to file an additional individual brief if any defendant so desired. Dkt. No. 159. Pursuant to that invitation, defendant Millennial Media, Inc. ("Millennial Media") filed a brief regarding an issue that was pending before Judge Davila before the cases were related—the scope of the estoppel applicable to Millennial Media should the court maintain the stays. Dkt. No. 164 ("Millennial Media Individual Brief"). All of the stay issues in all related cases are now properly before the court. For the following reasons, the court GRANTS the motion to stay the related civil infringement litigation until a final written decision under 35 U.S.C. § 318(a) has been rendered in the pending *inter partes* review.  As a condition of the stay, each non-petitioning party must agree that it will not assert the invalidity of any claim on any ground raised in the IPR and on which a final written decision was rendered in the IPR. *See* 35 U.S.C. § 315(e)(2).

## I.  BACKGROUND

In October 2012, Evolutionary Intelligence, LLC ("Evolutionary Intelligence") filed complaints alleging infringement of the '536 Patent and '682 Patent in the Eastern District of Texas against nine groups of defendants.[2] From July to September 2013, the nine actions were transferred to this district. An October 8 order denied relating the nine actions. *Evolutionary Intelligence, LLC v. Yelp, Inc.,* No. 4:13-cv-03587-DMR, Dkt. No. 82 (N.D. Cal. Oct. 8, 2013).

---

[1] Millennial Media refused to agree that the full statutory estoppel would apply to it as a condition of the stay. This issue is addressed at Section II.D.

[2] The nine cases are *Evolutionary Intelligence LLC v. Apple, Inc.*, C-12-00783 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Facebook, Inc.*, C-12-00784 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Foursquare Labs, Inc.*, C-12-00785 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Groupon, Inc.*, C-12-00787 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. LivingSocial, Inc.*, C-12-00789 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Millenial Media, Inc.*, C-6:12-00790 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, C-12-00791 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Twitter, Inc.*, C-12-00792 (E.D. Tex. Oct. 17, 2012); *Evolutionary Intelligence LLC v. Yelp, Inc.*, C-12-00794 (E.D. Tex. Oct. 17, 2012).

United States District Court
For the Northern District of California

On October 22 and 23, 2013, several of the defendants in the Evolutionary Intelligence actions filed a total of eight petitions for *inter partes* review at the U.S. Patent and Trademark Office ("PTO"), combining to seek review of all claims of the patents-in-suit. Dkt. No. 90, Declaration of Beth Larigan, Exs. 3-10. The PTO issued decisions on all IPR petitions on April 25, 2014. Dkt. No. 130, at 2. The following chart summarizes the petitions.

| Case Number | Patent and Claims | Entity | Result |
|---|---|---|---|
| IPR2014-00082 | '536 patent claims 1, 3-15 | Apple | Denied |
| IPR2014-00083 | '536 patent claims 1, 3-15 | Apple | Denied |
| IPR2014-00085 | '536 patent claims 2-14 and 16 | Apple | Denied |
| IPR2014-00086 | '536 patent claims 2-14 and 16 | Apple | Granted: claims 2-12, 14, and 16 |
| IPR2014-00092 | '536 patent claims 1-16 (all claims) | Yelp and Twitter | Denied |
| IPR2014-00093 | '536 patent claims 15 and 16 | Facebook | Denied |
| IPR2014-00079 | '682 patent claims 1-23 (all claims) | Apple | Denied |
| IPR2014-00080 | '682 patent claims 1-23 (all claims) | Apple | Denied |

Pursuant to the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 6(a), 125 Stat. 284, 299-304 (2011), codified at 35 U.S.C. §§ 311-319 (2013), the IPR proceeding replaces the old *inter partes* reexamination ("reexam") proceeding. "The purpose of this reform was to 'convert [] inter partes reexamination from an examinational to an adjudicative proceeding.'" *Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013 (quoting H.R. Rep. No. 112-98, pt. 1, at 46-47 (2011)). An IPR petitioner may challenge patent validity under 35 U.S.C. §§ 102 or 103 "only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). To initiate an IPR, the petitioner must show "that the information presented in the petition filed . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* § 314(a) (by contrast, the old reexam proceeding required a showing of a "substantial new question of patentability."). Following

United States District Court
For the Northern District of California

1   a petition, the PTO has three months from the date the patent holder files a response, or the date that

2   the response was due if no response is filed, to decide whether to institute the IPR. 35 U.S.C.

3   § 314(b).

4          The AIA requires a final determination by the PTO in an IPR proceeding within one year,

5   which may be extended up to six months based upon a showing of good cause. *Id.* § 316(a)(11).

6   "For comparison, the old reexamination proceeding averaged over thirty-seven months in the

7   second quarter of fiscal year 2013." *Pi-Net Int'l, Inc. v. Focus Business Bank*, C-12-4958 PSG, 2013

8   WL 4475940, at *2 (N.D. Cal. Aug. 16, 2013).

9          Before the cases were related, all nine defendants brought motions to stay pending *inter*

10  *partes* review in their separate actions. Each motion was granted, so all cases are currently stayed.[3]

11  On April 25, 2014, the PTAB granted *inter partes* review of claims 2-12, 14, and 16 of the '536

12  Patent, but denied the IPR petitions as to all claims of the '682 Patent and all other claims of the

13  '536 Patent. *See* '536 Patent, IPR2014-00086, Institution of *Inter Partes* Review (P.T.A.B. April 25,

14  2014) (granting Apple's IPR petition as to claims 2-12, 14, and 16 of the '536 Patent). Following

15  the PTAB's rulings on the IPR petitions, Evolutionary Intelligence requested that the stays be lifted

16  in several of the cases.[4] Only one judge ruled on the issue, denying the motion to lift the stay. *See*

17

18  [3] *See Evolutionary Intelligence LLC v. Sprint Nextel Corp., et al.*, C-13-04513 RMW (N.D. Cal.
    February 28, 2014), Dkt. No. 123 (stayed until conclusion of IPR proceedings); *Evolutionary*

19  *Intelligence LLC v. Twitter, Inc.*, C-13-04207 JSW (N.D. Cal. Feb. 25, 2014), Dkt. No. 111 (stayed
    until conclusion of IPR proceedings); *Evolutionary Intelligence LLC v. Facebook, Inc.*, C-13-04202

20  SI (N.D. Cal. Jan. 23, 2014), Dkt. No. 148 (stayed until conclusion of IPR proceedings);
    *Evolutionary Intelligence LLC v. Groupon, Inc.*, C-13-04204 SI (N.D. Cal. Jan. 23, 2014), Dkt. No.

21  104 (stayed until conclusion of IPR proceedings); *Evolutionary Intelligence LLC v. LivingSocial,
    Inc.*, C-13-04205 WHO (N.D. Cal. Jan. 17, 2014), Dkt. No. 96 (stayed until conclusion of IPR

22  proceedings); *Evolutionary Intelligence LLC v. Foursquare Labs, Inc.*, C-13-04203 MMC (N.D.
    Cal. Jan. 10, 2014), Dkt. No. 99 (stayed until conclusion of IPR proceedings); *Evolutionary*

23  *Intelligence LLC v. Apple, Inc.*, C-13-04201 WHA (N.D. Cal. Jan. 9, 2014), Dkt. No. 123 (case
    partially stayed pending PTAB's decision on whether to institute proceedings on Apple's petitions);

24  *Evolutionary Intelligence LLC v. Yelp, Inc.*, C-13-03587 DMR (N.D. Cal. Dec. 18, 2013), Dkt. No.
    108 (motion to stay granted); *Evolutionary Intelligence, LLC vs. Millennial Media, Inc.*, C-13-

25  04206 EJD (N.D. Cal. Jan. 31, 2014), Dkt. No. 113 (conditioned stay until conclusion of IPR
    proceedings on Millennial Media's agreement to be bound by the full statutory estoppel).

26  [4] Evolutionary Intelligence moved to lift the stay in the *LivingSocial* case. On June 16, 2014, Judge

27  Orrick declined to lift the stay in the *LivingSocial* case. *See Evolutionary Intelligence LLC v.
    LivingSocial, Inc.*, C-13-04205 WHO (N.D. Cal. Jun. 16, 2014), Dkt. No. 106 (motion to lift denied;

28  stayed until conclusion of IPR proceedings). Evolutionary Intelligence requested the courts lift stays

1   *Evolutionary Intelligence LLC v. LivingSocial, Inc.*, C-13-04205 WHO (N.D. Cal. Jun. 16, 2014),

2   Dkt. No. 106 (motion to lift denied; stayed until conclusion of IPR proceedings).

3          On June 23, 2014, the undersigned ordered that the parties in all cases show cause why the

4   *Evolutionary Intelligence* cases should not be consolidated for all pretrial proceedings through claim

5   construction. *See, e.g.*, *Evolutionary Intelligence LLC v. Sprint Nextel Corp., et al.*, C-13-04513

6   RMW (N.D. Cal. June 23, 2014), Dkt. No. 143. Following a hearing and an order assigning the

7   issue of consolidation and relation to the undersigned, *see Evolutionary Intelligence LLC v. Sprint*

8   *Nextel Corp., et al.*, C-13-04513 RMW (N.D. Cal. July 28, 2014), Dkt. No. 158, the court ordered

9   that the *Evolutionary Intelligence* cases be related, *see Evolutionary Intelligence LLC v. Sprint*

10  *Nextel Corp., et al.*, C-13-04513 RMW (N.D. Cal. July 28, 2014), Dkt. No. 159. In the order

11  relating the cases, the court ordered the parties to brief the issue of whether the stays should be

12  lifted. Having considered the parties' briefs, the arguments at the hearing, and the relevant law, the

13  court now analyzes the issue.

14                              **II.  ANALYSIS**

15         "Courts have inherent power to manage their dockets and stay proceedings, including the

16  authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849

17  F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted). This inherent power to stay a case pending

18  the PTO's review of a patent "*resides with the Court* to prevent costly pretrial maneuvering which

19  attempts to *circumvent* the reexamination procedure." *Gould v. Control Laser Corp.*, 705 F.2d 1340,

20  1342 (Fed. Cir. 1983) (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980)) (emphasis

21  in original). A stay should be lifted when the "[p]etitioners no longer satisfy the standard for

22  issuance of a stay." *Alaska Survival v. Surface Transp. Bd.*, 704 F.3d 615, 616 (9th Cir. 2012).

23

24  in four other cases, but no judge had yet ruled on any of these requests when the cases were related.

25  *See Evolutionary Intelligence LLC v. Apple, Inc.*, C-13-04201 WHA (N.D. Cal. May 1, 2014), Dkt.
    No. 124 (case management statement, no ruling on issue); *Evolutionary Intelligence LLC v.*

26  *Facebook, Inc.*, C-13-04202 SI (N.D. Cal. May 5, 2014), Dkt. No. 150 (joint status report, no ruling
    on issue); *Evolutionary Intelligence LLC v. Groupon, Inc.*, C-13-04204 SI (N.D. Cal. May 5, 2014),

27  Dkt. No. 109 (status report, no ruling on issue); *See Evolutionary Intelligence LLC v. Sprint Nextel*

28  *Corp., et al.*, C-13-04513 RMW (N.D. Cal. May 5, 2014), Dkt. No. 130 (joint status report, issue
    now before the undersigned).

ORDER MAINTAINING STAY
RDS                                                    - 7 -

In determining whether to grant a stay pending review, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006); *accord Pi-Net*, 2013 WL 4475940, at *3.

## A. Stage of the Litigation

The court first examines the stage of the litigation. Considerations include whether discovery is complete and whether a trial date has been set. *See Telemac*, 450 F. Supp. 2d at 1111.  Prior to the stay, none of the cases had progressed beyond the exchange of infringement and invalidity contentions.

Even when the parties have "spent significant time and resources on discovery," the stage of litigation factor can be neutral. *Software Rights Archive, LLC v. Facebook, Inc.*, C-11-02168 EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11, 2011). "When, as here, there has been no material progress in the litigation, courts in this district strongly favor granting stays pending *inter partes* [review]." *Pragmatus AV, LLC v. Facebook, Inc.*, C-11-02168 EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11, 2011) (granting stay pending reexam where plaintiff had served infringement contentions and written discovery); *see also Ho Keung Tse v. Apple Inc.*, C-06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007) ("A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery."). As the stage of the case has not advanced since the stay was issued, this factor continues to weigh in favor of a stay.

## B. Simplification of the Case

Evolutionary Intelligence argues that the original justification for the stay no longer exists now that the PTAB has denied petitions for *inter partes* review for all but 13 claims of one of the two patents-in-suit. Simplification of the case is therefore limited to only those 13 claims and any overlapping claim construction issues. *See Evolutionary Intelligence LLC v. LivingSocial, Inc.*, C-13-04205 WHO (N.D. Cal. Jun. 16, 2014), Dkt. No. 106 ("Order Denying Motion to Lift Stay"), at 4-5.

United States District Court
For the Northern District of California

1    Nevertheless, the results of the IPR will substantially simplify the case. The PTAB initially

2 determined that claims 2-12, 14, and 16 of the '536 Patent are reasonably likely to be anticipated by

3 the *Gibbs* reference. If the PTAB maintains this original ruling, thirteen claims of the '536 will be

4 cancelled, and Evolutionary Intelligence will not be able to assert them in the related actions. Even

5 if the PTAB does not cancel the claims subject to the IPR, statutory estoppel and the estoppel agreed

6 to as a condition of the stay will simplify the litigation by preventing parties to the IPR from

7 relitigating the same validity issues considered in the IPR. *See* 35 U.S.C. § 315(e)(2).

8    Furthermore, the '682 Patent is a continuation of the '536 Patent at issue in the IPR.

9 Consequently, the two patents share largely identical specifications, titles, figures, and key terms for

10 construction. For example, the '536 Patent and '682 Patent both contain the key terms "container,"

11 "register," "gateway," "active . . . register," "passive . . . register," and "neutral . . . register." In its

12 order instituting the IPR, the PTAB issued preliminary constructions of all of these terms, and the

13 PTAB will supply final decisions on these terms by the conclusion of the IPR proceedings. *See* '536

14 Patent, IPR2014-00086, Institution of *Inter Partes* Review (P.T.A.B. April 25, 2014). While the

15 PTAB's constructions will not be binding on this court, the IPR will inform this court's ultimate

16 reasoning.

17    The IPR proceedings will also add to the '536 Patent's prosecution history. Prosecution

18 history is an important part of the intrinsic record relevant to claim construction. *Phillips v. AWH*

19 *Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("a court should also consider the patent's prosecution

20 history") (quotation omitted). Statements made by Evolutionary Intelligence during the IPR could

21 disclaim claim scope, aid the court in understanding the meaning of the terms, or otherwise affect

22 the interpretation of key terms. According to defendants, Evolutionary Intelligence has already

23 made such statements. *See* Def. Joint Brief, at 5-6. Maintaining the stays will allow the full intrinsic

24 record to be before the court at claim construction.

25    Therefore, based on the facts of these cases, the IPR proceedings will substantially simplify

26 the issues in the instant cases such that maintaining the stays is warranted. The IPR may result in the

27 cancellation of 13 claims of the '536 Patent. At the very least, defendants will be estopped from

28 asserting the *Gibbs* prior art once the stays are lifted. There are numerous overlapping terms for

ORDER MAINTAINING STAY
RDS

United States District Court
For the Northern District of California

1   claim construction between the '536 Patent and the '682 Patent. The IPR will fully develop the

2   intrinsic record and allow this court to construe the terms of the two patents as accurately as

3   possible. In the past where courts in this district have encountered this type of situation—where IPR

4   or reexam has been instituted as to one patent-in-suit, but not a related patent—courts have elected

5   to stay the entire case. *See, e.g.*, Order Denying Motion to Lift Stay, at 7; *Sonics, Inc. v. Arteris,*

6   *Inc.*, 2013 WL 503091, at *3 (N.D. Cal. Feb. 8, 2013) ("When there are overlapping issues between

7   the reexamined patents and other non-reexamined patents-in-suit, courts have found that staying the

8   entire case is warranted."); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *4 (N.D.

9   Cal. March 16, 2006) ("When there are overlapping issues between the reexamined patents and

10  other patents in suit, courts have found staying the entire case to be warranted."); *Methode Elec.*,

11  2000 WL 35357130, at *3 ("granting a stay with respect to only the '408 patent would be

12  problematic since the '468 patent involves the same accused device"). Consistent with these prior

13  decisions, the court here finds that the simplification of the case factor strongly favors maintaining

14  the stays.

15      **C.  Undue Prejudice**

16      Evolutionary Intelligence contends that a continued stay unduly prejudices its right to

17  enforce its intellectual property, especially as to those claims that are not subject to IPR. Dkt. No.

18  167, at 8. However, the court previously considered this argument when it originally granted the

19  stay, finding that Evolutionary Intelligence suffers no irreparable harm from a stay:

20          More importantly, because Evolutionary Intelligence and Sprint are not
            competitors (Evolutionary Intelligence does not market any products or
21          services practicing the patents-in-suit), Evolutionary Intelligence does not
            risk irreparable harm by defendants' continued use of the accused
22          technology and can be fully restored to the *status quo ante* with monetary
            relief. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694
23          F.3d 1312, 1339-41 (Fed. Cir. 2012). This factor strongly favors granting
            the stay. *See, e.g., Convergence Techs. (USA), LLC v. Microloops Corp.*,
24          C-10-02051 EJD, 2012 WL 1232187, at *2-3 (N.D. Cal. Apr. 12, 2012)
            (granting stay, in part, because plaintiff did not practice the asserted patent
25          and was not in direct competition with defendant); *Agavo Techs. Fiber IP
            (Singapore) Pte. Ltd. v. IPtronics Inc*, C-10-2863, 2011 WL 3267768, at
26          *5 (N.D. Cal. July 28, 2011) ("Unlike patent infringement actions
            involving non-practicing entities, infringement among competitors can
27          cause harm in the marketplace that is not compensable by readily
            calculable money damages.").
28

1    Dkt. No. 123, at 7. Evolutionary Intelligence points to no new facts that change this analysis.

2              Evolutionary Intelligence argues that a stay would result in more third party discovery,

3    which would be burdensome and constitute undue prejudice. Because many of the defendants have

4    high rates of employee turnover, important witnesses will necessarily leave for other jobs during a

5    continued stay. However, the most that Evolutionary Intelligence can claim would result from a stay

6    of seven to thirteen months would be slightly higher costs, and possibly slightly dampened

7    memories. The Federal Circuit has found that this sort of inconvenience does not rise to the level of

8    undue prejudice. *VirtualAgility Inc. v. Salesforce.com, Inc.*, No. 2014-1232, ___ F.3d ___, 2014 WL

9    3360806, at *10 (Fed. Cir. July 10, 2014) ("It is undoubtedly true, as many courts have observed,

10   that with age and the passage of time, memories may fade and witnesses may become unavailable.

11   Without more, however, these assertions here are not sufficient to justify a conclusion of undue

12   prejudice."). Furthermore, the asserted patents issued in 2006 and 2010, but Evolutionary

13   Intelligence did not bring the instant suits until October 17, 2012. Given that Evolutionary

14   Intelligence waited multiple years to assert its patent claims, Evolutionary Intelligence's concerns

15   that a seven to thirteen month stay would cause undue prejudice ring hollow. *See VirtualAgility*,

16   2014 WL 3360806, at *10 ("We also note that VA, for some unexplained reason, waited nearly a

17   year after the ′413 patent issued before it filed suit against Defendants. These facts weigh against

18   VA's claims that it will be unduly prejudiced by a stay.").

19             To be weighed against Evolutionary Intelligence's complaints that a stay would increase

20   litigation costs are defendants' arguments that lifting the stay would increase litigation costs via

21   discovery duplication. Defendants assert that, absent a stay, they may be forced to conduct

22   discovery on certain issues during the IPR's pendency, and then re-conduct that discovery after the

23   parties are informed by the PTAB's final decision. Defendants specifically cite the potential need to

24   take some individuals' depositions twice, serve ultimately unnecessary third party subpoenas, and

25   duplicate discovery requests. Although defendants' concerns are somewhat exaggerated, it is likely

26   that lifting the stay would result in some duplicative discovery. This inefficiency favors maintaining

27   the stays at least as much as Evolutionary Intelligence's claims about the stays increasing litigation

28   costs favor lifting the stays.

1   Finally, the court observes that Evolutionary Intelligence and the defendants are not

2 competitors. Evolutionary Intelligence does not market any products or services practicing the

3 patents-in-suit. Consequently, Evolutionary Intelligence is not at risk for irreparable harm from

4 defendants' continued use of the accused technology, and Evolutionary Intelligence can be fully

5 restored to the *status quo ante* with monetary relief. *See ActiveVideo Networks, Inc. v. Verizon*

6 *Commc'ns, Inc.*, 694 F.3d 1312, 1339-41 (Fed. Cir. 2012). Therefore, in sum, Evolutionary

7 Intelligence will not suffer undue prejudice if the court maintains the stays. *See, e.g.*, *Convergence*

8 *Techs. (USA), LLC v. Microloops Corp.*, C-10-02051 EJD, 2012 WL 1232187, at *2-3 (N.D. Cal.

9 Apr. 12, 2012) (granting stay, in part, because plaintiff did not practice the asserted patent and was

10 not in direct competition with defendant); *Agavo Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics*

11 *Inc*, C-10-2863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("Unlike patent infringement

12 actions involving non-practicing entities, infringement among competitors can cause harm in the

13 marketplace that is not compensable by readily calculable money damages.").

14   Thus, because all three factors support maintaining the stays, the court GRANTS

15 defendants' motion.

16     **D.  Estoppel of Claims by Defendants Not Participating in the IPR**

17   One final issue requires the court's attention. In the *Millennial Media* case, Judge Davila

18 conditioned the stay on Millennial Media agreeing to be estopped from raising arguments that were

19 raised or could have been raised in the IPR. *Evolutionary Intelligence, LLC vs. Millennial Media,*

20 *Inc.*, C-13-04206 EJD (N.D. Cal. Jan. 31, 2014), Dkt. No. 126. As Millennial Media is not a party to

21 the IPR and allegedly has no influence on which arguments are raised in the IPR, Millennial Media

22 informed the court that it could not agree to such broad estoppel. *Evolutionary Intelligence, LLC vs.*

23 *Millennial Media, Inc.*, C-13-04206 EJD (N.D. Cal. Jan. 31, 2014), Dkt. No. 127. The court must

24 thus decide whether to continue to require that condition as requisite for a continued stay.

25   Judicial efficiency strongly favors staying the case and applying a narrower estoppel to

26 Millennial Media than originally required. Proceeding with the *Millennial Media* case while the

27 other eight cases are stayed would defeat the purpose of the stays. Discovery would commence in

28 that case, necessitating duplicative discovery once the court lifts the stays in the other cases, and the

ORDER MAINTAINING STAY
RDS

1   court would be required to construe the claim language before the IPR has concluded. Some of the

2   judicial resources that were conserved by relating the nine cases would also be lost, as there would

3   be two parallel proceedings. Accordingly, it would be highly impractical to proceed with only the

4   Millennial Media case.

5          Fairness also dictates that Millennial Media be bound by narrower estoppel. Millennial

6   Media represents that "Millennial had no involvement in the IPR petitions filed by Apple,

7   Facebook, Twitter, and Yelp and, in the one IPR that the PTO did institute, Millennial will have no

8   ability to control or influence the proceedings, arguments, or issues advanced in that IPR."

9   Millennial Media Individual Brief, at 1. Based on similar representations from Sprint, this court

10  found it would be inequitable to bind Sprint to the full statutory estoppel. *Evolutionary Intelligence*

11  *LLC v. Sprint Nextel Corp., et al.*, C-13-04513 RMW (N.D. Cal. February 28, 2014), Dkt. No. 123,

12  at 8-9. Here too it would be inequitable to bind Millennial Media to the full statutory estoppel when

13  Millennial Media had no control over any of the IPR petitions. Evolutionary Intelligence reasonably

14  protests that Millennial Media was given a choice between full statutory estoppel and no stay, and

15  Millennial Media declined the stay. However, the interests in judicial efficiency and fairness simply

16  outweigh the interest in forcing Millennial Media into the choice it was originally given.

17         Judicial decision making is flexible and can account for changed circumstances. Here, the

18  new posture of the *Millennial Media* case compels reconsideration of Judge Davila's order.

19  Therefore, in the interest of judicial efficiency and fairness, the court stays all the related cases on

20  the same condition, namely that each of the non-petitioning parties agrees that it will not assert the

21  invalidity of any claim on any ground raised in the IPR and on which a final written decision is

22  rendered under 35 U.S.C. § 318(a). Such estoppel will appropriately balance two competing

23  concerns: (1) protecting the integrity of PTO proceedings by preventing parties from having a

24  "second bite at the apple," and (2) protecting non-participating defendants from being precluded

25  from raising an argument that was not made in the IPR proceedings.

26                                    **III.  ORDER**

27         For the foregoing reasons, the court GRANTS the motion to stay the related litigation until

28  final written decision in the IPR, the date by which a final decision is now due, or further order of

*United States District Court*
*For the Northern District of California*

ORDER MAINTAINING STAY
RDS
                              - 13 -

1  the court, whichever occurs first. The stay is conditioned upon a written commitment of each the

2  non-petitioning defendants filed in writing no later than Tuesday, October 7, 2014 that:

3          [name of non-participating party] will not assert the invalidity of any

4          claim on any ground raised in the IPR and on which a final written

5          decision is rendered under 35 U.S.C. § 318(a). Any dispute as to what is

6          meant by "final written decision" or "any ground raised" will be resolved

7          by the court.

8      The statutory estoppel of 35 U.S.C. § 315(e)(2) applies to IPR participants.

9      Within one week of the written final decision in the IPR, the parties shall file a joint status

10  report informing the court as to the outcome of the IPR.

11

12  Dated: September 26, 2014

13  RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California